# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ARCHITECTURAL & IRON WORKERS' LOCAL NO. 63 WELFARE FUND, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 25 CV |
| | ) | Judge: |
| v. | ) ) | Magistrate: |
| JOHN HALL | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiff, ARCHITECTURAL IRON WORKERS' LOCAL NO. 63 WELFARE FUND ("the Fund"), by and through its undersigned attorneys, complains of the Defendant, JOHN HALL, and alleges as follows:

## PARTIES

1. The Fund is a joint-administered, multi-employer employee welfare benefit plan established under Section 302(c)(5) of the Labor-Management Relations Act and governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(1), 1132.

2. The Fund is maintained pursuant to collective bargaining agreements ("CBAs") between Architectural and Ornamental Ironworkers Union No. 63, ("Local 63") and various signatory employers. The Fund is administered by a Board of Trustees composed of equal employer and labor representatives.

3. The Fund collects weekly fringe benefit contributions from its signatory employers based on hours worked by covered employees, invests and holds those funds in trust, and pays medical, dental, vision, prescription, disability, and other welfare benefits to eligible participants

and their beneficiaries in accordance with the Fund's governing Plan Document ("the Plan") and trust agreements.

4. The Plan sets forth the eligibility requirements, benefit levels, contributions obligations, claims procedures, and administrative rules applicable to participants and beneficiaries. It also specifies the circumstances under which benefits may be awarded, denied, suspended, or terminated. A copy of the relevant portions of the Fund's Plan Document at-issue in this lawsuit are attached hereto as Exhibit A.

5. Defendant is an individual who is a former elected officer and current member of Local. Defendant resides at 4115 Stillwell Place, Oak Lawn, Illinois 60453.

## JURISDICTION

6. This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) because Plaintiff brings this suit under 29 U.S.C. § 1132(a)(3) to enforce the terms of an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq.

7. The Court's remaining counts bring state law claims arising out of a common nucleus of operative fact with the facts of Count I. Therefore, this Court should exercise its pendent jurisdiction over these claims under 28 U.S.C. § 1367(a).

## VENUE

8. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(1) because the Fund is administered in this District and the Defendant resides in this District.

## GENERAL ALLEGATIONS

9. From 2013 until 2020, Defendant served as a full-time, salaried business agent for Local 63.

10. During his tenure as business agent, Local 63 made fringe benefit contributions on the Defendant's behalf to the Fund.

11. By virtue of those contributions, Defendant received healthcare coverage for his family and himself.

12. On November 6, 2020, Local 63's Business Manager terminated Defendant from his employment as the Union's business agent. However, despite his dismissal from the Business Agent position, Defendant remained a member of Local 63.

13. After November 6, 2020, Defendant continued to perform work for various signatory employers who made fringe benefit contributions on Defendant's behalf to the Fund. (Exhibit B, Fringe Benefit Contributions). For example:

    a. Signatory contractor DePasquale Steel Erectors, Inc., made fringe benefit contributions for covered work performed by Defendant from December 2020 and January 2021. (Ex. B).

    b. Signatory contractor DuBurg Iron Works, Inc., made fringe benefit contributions for covered work performed by Defendant from January 2021 and February 2021. (Ex. B).

    c. Signatory contractor M&M Steel Erectors, LLC, made fringe benefit contributions for covered work performed by Defendant from March 2021 and April 2021. (Ex. B).

    d. Signatory contractor Door Service, Inc., made fringe benefit contributions for covered work performed by Defendant from April 2021 to October 2021. (Ex. B).

14. After October 2021, Defendant sought to maintain his coverage through the Fund by making self-payments, and later, COBRA payments. (Ex. B).

15. Article XIX, Section 10a of the Constitution of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("International Constitution") provides that charges may be brought against any officer of a Local Union for "engaging in conduct tending to interfere with the performance of the International Association or any affiliated Local Unions of its legal or contractual obligations, ***such as working for a non-signatory employer***."(Exhibit C, International Constitution, pp. 2-3)(emphasis added).

16. Article XI of the Constitution and By-Laws of Architectural and Ornamental Iron Workers Union Local No. 63 ("Local 63 Constitution") provides: "Charges against any member of this Local Union for violation of any of the provisions of these By-Laws or any provisions of the International Constitution may be brought and processed in accordance with the applicable provisions of the International Constitution." (Exhibit D, Local 63 Constitution, p. 3).

17. The Plan explains to participants:

"The Fund receives contributions from employers who have entered into a collective bargaining agreement with the Union or participant agreements with the Trustees. Contributions received from employees, dependents and retirees for the purpose of maintaining coverage in accordance with the self-payment rules. **You are entitled to participate in this Plan if you work under one of the collective bargaining Architectural Iron Workers Local No. 63 Welfare Fund agreements or participant agreements if your employer makes the required contributions to the Fund for you**." (Emphasis added)(Ex. A, pp. 11-12).

18. Under the Plan's self-payment rules, "[y]ou can make a regular self-payment only if you are available for work at employment for which contributions are required to be made to this Fund." (Ex. A, p. 4).

19. On December 6, 2021, Defendant incorporated Door & Steel, Inc., on December 6, 2021, through his accountant, Stuart P. Lerman. (Exhibit E, Articles of Incorporation).

4

20. Defendant serves as the president of Door & Steel. (Exhibit F, Door & Steel Annual Corporate Reports).

21. Defendant has served Door & Steel as its president and sole director from its incorporation. (Ex. F).

22. On December 11, 2024, Door & Steel assumed the adoptive business name of H&B Maintenance Services. (Exhibit G, Application to Assume Adopted Name).

23. Defendant is the owner and face of Door & Steel. (Exhibit H, Door & Steel Webpage).

24. Upon information and belief, Defendant represented to certain Local 63 members that Door & Steel would imminently enter a collective bargaining relationship with Local 63, Door & Steel never, in fact, signed a memorandum of agreement nor CBA with Local 63.

25. Under the Local 63 CBA:

> The territory covered by this Agreement shall be the territorial jurisdiction of Local No. 63, which is as follows:
>
> ON THE NORTH – Wisconsin State Line
> ON THE NORTHWEST – From County Line on Route 53, follow Cook County Line to McHenry County, West of Kane County Line to Route 31, North on Route 31 to Route 8 14, Northwest on Route 14 to Route 47 to Wisconsin Line. Territories East of these Routes belong to Local No. 63.
> ON THE WEST – Illinois Route 53 from Cook County Line South to 31st Street, then East on 31st Street to Eastern City limits of Downers Grove, South on Fairview Avenue onto Route 55, then East on 91st Street to Clarendon Hills Road, South on Line with Clarendon Hills Road to Cook County Line.
> ON THE SOUTH AND SOUTHWEST – Will County Line
> ON THE SOUTHEAST – Indiana State Line.

(Exhibit I, Local 63 Collective Bargaining Agreement).

26. Defendant and Door & Steel performed iron work at the Art Institute of Chicago. (Exhibit J)

27. Defendant and Door & Steel have also worked on a stair stringer "in a high-rise building in downtown Chicago." (Ex. J).

28. As an owner, officer, and full-time employee of a non-Union iron working company, Defendant was not "available for work at employment for which contributions are required to be made to this Fund." (Ex. A, p. 4).

### *Misrepresented Workers Compensation Injury*

29. Under the Plan:

    No benefits will be payable by this Plan for any charges for:

    \*\*\*

    Work-related injuries, sicknesses, diseases or defects, including any condition which occurs during or arises out of any occupation for wage or profit. (If the workers' compensation or any occupational disease claim is rejected, the sickness or injury will not be considered work-related.) (Ex. A, pp. 5-9).

30. On March 30, 2023, Defendant suffered injuries while performing work on behalf of Door & Steel, Inc. (Exhibit K, Travis Kulka Decl.).

31. The Fund sent Defendant a Request for Accident/Injury Details form on April 10, 2023.

32. On the Accident/Injury Details form, Defendant stated he was injured while "loading a piece of glass into [his] truck," "[n]ear Indiana Route 10 and East Ann St. near San Pierre, Indiana." (Exhibit L, Accident/Injury Details Form).

33. In response to the form's question, "[w]as accident, injury or illness work related," Defendant checked a "NO" line. (Ex. L).

6

34. By seeking coverage through the Fund and claiming his injury to be non-work-related, Defendant spared himself and his company, Door & Steel, from additional workers compensation claim history and premiums.

### *Refused Subrogation & Reimbursement*

35. The Plan provides "no benefits for claims related to injuries or sicknesses which are caused by third parties." (Ex. A, p. 10).

36. However, the Plan "may pay benefits for claims which a third party is liable if the covered person agrees to execute a subrogation and reimbursement agreement." (Ex. A, p. 10).

37. By executing the agreement, a covered person "agrees to reimburse the Plan from any recovery he receives and agrees to allow the Plan to participate in the recover process." (Ex. A, p. 10).

38. The agreement "grants the Plan a security interest and a right to reimbursement in any recover received from any third party or from any coverage received on account of the accident or sickness." (Ex. A, p. 10).

39. By executing the agreement, a covered person "agrees to not settle any claim which compromises the Plan's right of subrogation without the written consent of the Plan and agrees that the Plan has the right withhold future benefit payments until the Plan is fully reimburse (100%) of the claims have been paid)." (Ex. A, p. 10).

40. On October 17, 2019, Defendant engaged in a bar fight with a fellow Local 63 member that allegedly caused to suffer bodily injuries. (Exhibit M, 2020 Accident & Injury Paperwork).

41. On January 17, 2020, Defendant filed a personal injury action against the other Local 63 member in the Circuit Court of Cook County. (Ex. M)

42. Defendant also filed a workers' compensation case against Local 63 that same day. (Exhibit N, IWCC Docket).

43. On September 21, 2020, Defendant submitted medical claims for payment by the Fund based on injuries he claimed to have suffered during the October 2019 altercation. (Ex. M). Along with his medical claims, Defendant submitted an executed Subrogation and Reimbursement Agreement. (Ex. M.).

44. On October 10, 2020, the Fund's attorney issued a notice of their subrogation lien to the attorney hired to represent Defendant in his personal injury lawsuit. (Exhibit O, Notice of Lien).

45. In March 2022, Defendant settled his personal injury lawsuit with the other Local 63 member for $51,976.00. (Exhibit P, Notice of Dismissal Pursuant to Settlement).

46. On May 11, 2022, the Illinois Workers Compensation Commission approved a settlement agreement between Local 63 and Defendant. (Ex. N).

47. Neither Defendant nor his attorney informed the Fund or received the Fund's consent to enter into the settlement agreement in Defendant's personal injury matter.

48. Neither Defendant nor his attorney informed the Fund or received the Fund's consent to enter into the settlement agreement in Defendant's personal injury matter.

49. Neither Defendant nor his attorney provided the Fund with any reimbursement of the Fund's lien for the medical payments in made arising from Defendant's personal injury lawsuit or worker's compensation lawsuit.

50. As of April 9, 2025, the Fund had an outstanding lien of $9,069.63 out of medical claims it paid out for the alleged injuries Defendant suffered in October 2019.

51. On April 9, 2025, Fund counsel issued a letter to Defendant and his attorney demanding Defendant reimburse the Fund for its outstanding lien under the terms of both the executed reimbursement and the Plan Document. (Exhibit Q, Demand Letter).

52. Defendant and his attorney have refused to reimburse the Fund for its outstanding lien from $51,976 in settlement proceeds he received.

**Count I**
**ERISA 29 U.S.C. § 1132(a)(3) – Equitable Restitution**

53. Plaintiff realleges and incorporates by reference Paragraph 1 through Paragraph 52 as though fully set forth herein.

54. The Fund is an employee welfare benefit plan governed by ERISA, 29 U.S.C. §§ 1001 et seq., established to provide healthcare benefits to participants who are members of Local 63.

55. Under the terms of the Plan, the Fund expressly provides that it will not pay benefits for injuries or illnesses caused by third parties unless the covered person executes a Subrogation and Reimbursement Agreement, agreeing to reimburse the Fund from any third-party recovery obtained.

56. On or about September 21, 2020, Defendant submitted medical claims to the Fund for injuries sustained during an altercation occurring on October 17, 2019, and executed a Subrogation and Reimbursement Agreement explicitly agreeing to reimburse the Fund from any recovery obtained.

57. On October 10, 2020, the Fund's attorney properly notified Defendant's personal injury attorney of the Fund's subrogation lien against any recovery obtained in Defendant's personal injury action.

58. Defendant settled his personal injury lawsuit arising from the October 2019 altercation in March 2022, receiving settlement proceeds totaling $51,976.00.

59. Neither Defendant nor his attorney informed or sought consent from the Fund before settling the lawsuit, despite their clear obligations to do so under the executed Subrogation and Reimbursement Agreement.

60. Defendant and his attorney have subsequently failed and refused to reimburse the Fund's outstanding lien of $9,069.63 from the settlement proceeds.

61. Defendant's retention of the settlement proceeds without reimbursement to the Fund constitutes unjust enrichment and violates the clear terms of the Plan and the executed Subrogation and Reimbursement Agreement.

62. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff seeks equitable relief in the form of restitution or imposition of an equitable lien or constructive trust on the settlement funds retained by Defendant, plus interest, attorney's fees, costs, and any other appropriate equitable relief.

WHEREFORE, Plaintiff respectfully requests this Court:

a. Enter judgement in Plaintiff's favor and against Defendant on Count I of the Complaint.

b. Enter an Order imposing an equitable lien or constructive trust upon Defendant's settlement proceeds up to the amount of $9,069.63 plus interest;

c. Enter and Order instructing Defendant to immediately pay Plaintiff the sum of $9,069.63 plus interest;

d. Award Plaintiff its attorney's fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

e. Award Plaintiff such other equitable or legal relief as this Court deems just and proper.

## Count II
### Common Law Fraud – Concealed Workers' Compensation Injury

63. Plaintiff realleges and incorporates by reference Paragraph 1 through Paragraph 52 as though fully set forth herein.

64. Defendant was obligated to truthfully disclose the nature and circumstances of injuries for which he sought reimbursement from the Fund.

65. On or about March 30, 2023, Defendant sustained injuries while performing work for his own company, Door & Steel, Inc., at or near the San Pierre Post Office in Indiana (Ex. K).

66. Defendant intentionally misrepresented these injuries as non-work-related on the Fund's Accident/Injury Details form, indicating falsely that the injuries were sustained while loading glass into his truck in a non-work-related context.

67. At the time Defendant made this misrepresentation, he knew the statement was false, as he was actively engaged in work for his company, Door & Steel, Inc., at the time the injury occurred.

68. Defendant intentionally concealed the work-related nature of his injury to improperly obtain benefits from the Fund, thereby avoiding additional workers' compensation claims and insurance premium increases for his company.

69. The Fund reasonably relied upon Defendant's fraudulent misrepresentation, resulting in payments made on Defendant's behalf for medical treatment related to these injuries amounting to $17,142.34.

70. As a direct and proximate result of Defendant's fraudulent concealment, the Fund incurred damages in the form of improper payment of medical claims that should have been covered under workers' compensation insurance.

71. Defendant's conduct was intentional, willful, and malicious, warranting punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court:

a. Enter judgement in its favor and against Defendant on Count II of the Complaint;

b. Enter judgment against Defendant for compensatory damages equal to the $17,142.34 improperly paid by the Fund for the Defendant's concealed workers' compensation injury;

c. Award punitive damages in an amount sufficient to punish Defendant and deter similar future misconduct;

d. Award Plaintiff attorney's fees, costs, and expenses incurred in prosecuting this claim;

e. Grant Plaintiff any additional relief this Court deems just and proper.

## Count III
### Common Law Fraud – Misrepresentations regarding Union Affiliation

72. Plaintiff realleges and incorporates by reference Paragraph 1 through Paragraph 52 as though fully set forth herein.

73. To qualify for continued coverage and benefits under the Plan's self-payment provisions, an employee needed to "work under one of the collective bargaining Architectural Iron Workers Local No. 63 Welfare Fund agreements or participant agreements if [their] employer makes the required contributions to the Fund for you." (Emphasis added)(Ex. A).

74. At the time Defendant made these representations, he knew they were false, as Door & Steel, Inc., never negotiated, executed, or maintained any collective bargaining agreement with Local 63.

75. Defendant intended that the Fund and its trustees rely on these misrepresentations to permit him to maintain eligibility for benefits and to continue receiving Plan coverage and processing self-payments on behalf of Door & Steel, Inc.

76. The Fund reasonably relied on Defendant's false assurances, continued to accept self-payment contributions, and maintained benefits coverage for Defendant and his dependents under the Plan.

77. As a direct and proximate result of Defendant's fraudulent misrepresentations, the Fund incurred damages in the form of benefits paid and administrative costs expended, to which Defendant was not entitled absent union-signatory status. Specifically, the Fund paid out $131,005.80 in benefits to Defendant and his dependents based upon the Defendant's fraud.

78. Defendant's actions were intentional, willful, and malicious, thus entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff respectfully requests this Court:

a. Enter judgement in Plaintiff's favor and against Defendant on Count III of the Complaint;

b. Enter judgment against Defendant for compensatory damages equal to $131,005.80 in benefit payments and administrative costs improperly incurred by the Fund;

c. Award punitive damages in an amount sufficient to punish Defendant and deter similar future misconduct;

d. Award Plaintiff attorney's fees, costs, and expenses incurred in prosecuting this claim;

e. Grant Plaintiff any additional relief this Court deems just and proper

## Count IV
### Conversion of Plan Assets

79. Plaintiff realleges and incorporates by reference Paragraphs 1 through Paragraphs 52 as though fully set forth herein.

80. By virtue of Defendant's actions - including concealing the work-related nature of his injury and misrepresenting union affiliation - Defendant was paid benefits by the Fund to which he had no entitlement.

81. Defendant subsequently received settlement proceeds and self-payment credits and wrongfully retained and appropriated these funds, despite the Fund's equitable and contractual rights to recover the amounts paid on his behalf.

82. Defendant's retention and use of these funds constitute an unlawful exercise of dominion and control over the Fund's assets, inconsistent with and hostile to the Fund's property rights.

83. As a direct and proximate result of Defendant's conversion, the Fund has suffered damages in the amount of benefits and contributions improperly paid, plus any applicable interest.

WHEREFORE, Plaintiff respectfully requests this Court:

a. Enter judgement in Plaintiff's favor and against Defendant on Count IV of the Complaint;

b. Enter judgment against Defendant and award Plaintiff compensatory damages for the $148,148.14 in benefits and contributions improperly paid by the Fund;

c. Award Plaintiff pre- and post-judgment interest as allowed by law;

d. Award Plaintiff its costs and expenses incurred in prosecuting this action;

e. Grant Plaintiff any further relief this Court deems just and proper.

Respectfully submitted,

**ARCHITECTURAL IRON WORKERS LOCAL NO. 63 WELFARE FUND**,

By:/s/ *Kyle Sullivan*
One of its attorneys

Gregory W. Hosé
Andrew Pigott
Kyle Sullivan (ARDC No.: 6336828)
**Gregorio, Stec, Klein & Hosé, LLC**
2 N. LaSalle St., Suite 1650
Chicago, IL 60602
P: (312) 263-2343
ghose@gregoriolaw.com

apigott@gregoriolaw.com
ksullivan@gregoriolaw.com

15